UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARON SCHAEFER | CIVIL ACTION |
| VERSUS | NO. 16-17784 |
| DAVID PERALTA, *et al.* | SECTION M (3) |

## **ORDER & REASONS**

Before the Court is a motion by defendant the St. Bernard Parish Government (the "Parish") for summary judgment seeking dismissal of plaintiff Sharon Schaefer's retaliation and hostile work environment claims.[1] Schaefer filed a memorandum in opposition,[2] and both parties replied in further support of, or opposition to, the motion.[3] On September 26, 2019, the Court heard oral argument on the motion.[4] Having considered the parties' memoranda, the statements made at oral argument, the record, and the applicable law, the Court finds that summary judgment in favor of the Parish dismissing Schaefer's claims is warranted under controlling United States Supreme Court precedent because Schaefer was terminated for a non-retaliatory reason, and she did not avail herself of the Parish's reporting system to address the alleged hostile work environment.

---

[1] R. Docs. 123. Also before the Court are: (1) the Parish's motion to strike inadmissible exhibits and unsupported factual assertions from Schaefer's opposition to the Parish's motion for summary judgment (R. Doc. 132); and (2) Schaefer's motion for leave to supplement and amend her memorandum in opposition to the Parish's motion for summary judgment (R. Doc. 145). Both motions are opposed (R. Docs. 149 & 147, respectively). Because the Court finds that the Parish is entitled to summary judgment, even if all documents Schaefer seeks to admit are considered, IT IS ORDERED that the Parish's motion to strike (R. Doc. 132) is DENIED, and Schaefer's motion for leave to supplement (R. Doc. 145) is GRANTED.
[2] R. Doc. 129.
[3] R. Docs. 140, 158 & 162.
[4] R. Doc. 155.

I.  BACKGROUND

This matter concerns a former employee's claims for retaliation and hostile work environment brought against her former employer. In 2007, the Parish hired Schaefer as a legal secretary, and she was an at-will, unclassified employee.[5] Dr. Jerry Graves, Jr. was Schaefer's supervisor until he resigned in December 2013.[6] Thereafter, William McGoey became Schaefer's direct supervisor.[7]

Schaefer eventually began a romantic relationship with David Peralta, who was the Parish's chief administrative officer.[8] Schaefer and Peralta became engaged in June 2011.[9] Peralta was elected Parish president in November 2011, and took office in January 2012.[10] Schaefer and Peralta were married in March 2012.[11]

In September 2013, Schaefer witnessed fellow employee Donald Bourgeois gambling at work, and reported this conduct to Sharon Williams, the Parish's conflict attorney.[12] Peralta allegedly attacked Schaefer verbally for reporting Bourgeois's conduct to Williams, and suspended Schaefer for three days without pay.[13] Schaefer appealed the suspension, and was informed that Graves would overturn it.[14] However, Peralta emailed Graves and informed him that the suspension was not to be vacated, and the suspension was then upheld.[15]

---

[5] R. Doc. 97 at 4; R. Doc. 123-3 at 1.
[6] R. Doc. 123-3 at 2.
[7] *Id.*
[8] R. Doc. 97 at 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 6. The Parish says the gambling consisted of administering an office football pool.
[13] *Id.*
[14] *Id.*
[15] *Id.*

On October 27, 2013, Peralta allegedly raped Schaefer in a torture chamber he prepared in their home.[16] Peralta then prevented Schaefer from leaving the home.[17] Once she was able to escape, Schaefer immediately reported the rape to the police.[18]

On October 28, 2013, Schaefer went to her workplace at the Parish to request leave, but Peralta's personal attorney, Pat Fanning, allegedly accosted her and brought her to Peralta's office.[19] According to Schaefer, after Peralta apologized to her, he grabbed her and dug his fingers into her shoulder, threatened to fire her if she did not drop the charges, struck her when she refused to do so, and then forced her to walk out of the building while holding his hand in case any media were present.[20] Schaefer alleges that Fanning escorted her to the sheriff's office where she was supposed to drop the rape charges against Peralta.[21] Although she dropped the charges, Schaefer refused to withdraw the report, which angered Peralta.[22] Shortly thereafter, Schaefer and Peralta vacationed together at Walt Disney World.[23]

On December 4, 2013, Schaefer went to Peralta's office to see him.[24] He was not there, but his assistant Kim Owens was.[25] Schaefer told Owens that she was upset about family matters.[26] Then, Lenor Duplessis, another Parish employee, arrived and joined the conversation.[27] Schaefer commented that she needed a gun.[28] Duplessis advised Schaefer to seek professional help, and Schaefer told Duplessis that she was having trouble at home.[29]

---

[16] *Id.* at 7.
[17] *Id.* at 8.
[18] *Id.*
[19] *Id.* at 9.
[20] *Id.*
[21] *Id.* at 9-10.
[22] *Id.* at 10.
[23] R. Doc. 123-3 at 2.
[24] R. Doc. 123-5.
[25] *Id.*
[26] *Id.*
[27] *Id.*; R. Doc. 123-4.
[28] R. Doc. 123-5; R. Doc. 123-4.
[29] R. Doc. 123-4.

3

Schaefer and Owens both left the office, and Schaefer accused Owens of having an affair with Peralta, which Owens denied.[30]

On December 5, 2013, McGoey placed Schaefer on paid leave.[31] Another employee donated sick leave to Schaefer so that she could continue leave with pay until January 2, 2014.[32]

On December 23, 2013, Schaefer filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[33] In the EEOC charge, Schaefer alleges that she was repeatedly sexually harassed by Peralta and that she was retaliated against for filing a criminal complaint against Peralta.[34]

On January 1, 2014, Schaefer sent McGoey an email informing him that she was diagnosed with post-traumatic stress disorder ("PTSD") and requesting leave under the Family Medical Leave Act ("FMLA").[35] McGoey authorized Schaefer's requested FMLA leave, which began on January 2, 2014.[36]

On January 7, 2014, McGoey wrote to Schaeffer asking her to return any files or documents she might have because they are the property of the Parish.[37]

On March 14, 2014, the Parish's human resources department sent Schaefer a letter asking her to have her primary care physician complete the FMLA certification forms that were

---

[30] R. Doc. 123-5. The complaint alleges a different scenario for the events of December 4, 2013. R. Doc. 97. Schaefer alleges that on that day, she complained about Peralta's discrimination and he summoned her to his office where he verbally attacked her, forced her to take a leave of absence until January 1, 2014, and ordered her to withdraw the rape incident report and to commit herself to a mental institution. *Id.* at 10. There is no summary-judgment evidence in the record to support this alleged version of events. Further, at her deposition, Schaefer acknowledged that she made the gun comment in front of Owens and Duplessis, although she testified she immediately explained to Owens and Duplessis that she would not kill herself in light of her grandchildren. R. Doc. 129-7 at 12.
[31] R. Doc. 123-3 at 3.
[32] *Id.* at 3-4.
[33] R. Doc. 97-1.
[34] *Id.* at 1-2.
[35] R. Doc. 123-3 at 4.
[36] *Id.*
[37] R. Doc. 160-11.

previously provided to her.[38] The letter also informed Schaefer that her twelve weeks of FMLA leave would expire on April 1, 2014, and that her job would no longer be protected if she did not return to work on April 2, 2014.[39] Schaefer did not return to work on April 2, 2014, and she was terminated as a result.[40]

The EEOC sent Schaefer a right-to-sue letter on September 29, 2016, and she filed this action on December 23, 2016.[41] Initially, Schaefer brought a number of state law and federal claims, against several defendants, including a Title VII claim for hostile work environment and retaliation against the Parish.[42] In a December 7, 2017 Order & Reasons ruling on several motions, this Court dismissed all of Schaefer's claims except her retaliation and hostile work environment claims against the Parish.[43]

## II. PENDING MOTION

The Parish filed the instant motion for summary judgment arguing that Schaefer cannot prevail on her retaliation and hostile work environment claims.[44] With respect to the retaliation claim, the Parish argues that Schaefer cannot prove that her filing a police report against Peralta concerning the October 27, 2013 incident was the "but-for" cause of her termination.[45] Rather, the Parish contends that Schaefer was terminated because she failed to return to work from her FMLA leave and that she has admitted never returning to any type of work.[46] The Parish further

---

[38] R. Doc. 123-9 at 1.
[39] *Id.* at 1-2.
[40] R. Doc. 123-10.
[41] R. Doc. 97-2; R. Doc. 1.
[42] R. Doc. 1.
[43] R. Doc. 95. This case was originally assigned to another section of this Court but was realloted to this section upon the confirmation of the undersigned. R. Doc. 109.
[44] R. Doc. 123.
[45] R. Doc. 123-2 at 7-11.
[46] *Id.*

5

argues that Schaefer cannot prevail on her hostile work environment claim because she did not avail herself of the Parish's reporting mechanism.[47]

Schaefer, on the other hand, argues that she was terminated before she failed to return from FMLA leave, in closer proximity to her reporting the alleged rape.[48] According to Schaefer, she was terminated in December 2013.[49] Schaefer contends that the "tone" of McGoey's January 7, 2014 letter implies that she was terminated at least as of that date.[50] She also argues that her last day could not have been April 2, 2014, because she received her last pay check in February 2014.[51] As to the hostile work environment claim, Schaefer argues that Peralta prevented her from reporting his conduct but that, in any event, the Parish was aware of the conduct by virtue of Peralta's knowledge of it.[52]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for

---

[47] *Id.* at 12-15.
[48] R. Doc. 129 at 15-17.
[49] *Id.* at 16.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 11-12.

6

summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B.     Retaliation**

Title VII's anti-retaliation provision provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The Fifth Circuit's Title VII retaliation framework places the initial burden on the employee to produce evidence that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the adverse employment action and the protected activity. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). If the employee establishes this *prima facie* case, there is "an inference of retaliation," and "[t]he burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action." *Id.* "Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the

burden shifts back to the employee to demonstrate that the employer's stated reason is actually a pretext for retaliation." *Id.* (internal quotation omitted). "In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse employment action would not have occurred 'but for' the employee's decision to engage in an activity protected by Title VII." *Id.* (internal quotation omitted). Indeed, the Supreme Court has held "that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

The Court will assume without deciding that Schaefer has established a *prima facie* case of retaliation based on her April 2, 2014 termination. The Parish has produced evidence that it had a legitimate, non-discriminatory reason for terminating Schaefer's employment, specifically, that she exhausted her FMLA leave and failed to return to work on April 2, 2014, as she was instructed to in the March 14, 2014 letter to her, and Schaefer, to this day, still insists she is incapable of returning to work. *See Schilling v. La. Dept. of Transp. & Dev.*, 2014 WL 3721959, at *19 (M.D. La. July 28, 2014) (an employee's failure to return to work after exhausting FMLA leave is a legitimate, non-discriminatory reason for termination); *Johnson v. Dallas Cty. Sw. Inst. of Forensic Sci. & Med. Exam'r Dep't*, 2014 WL 177284, at *7-8 (N.D. Tex. Jan. 16, 2014) (same).

Because the Parish has met its burden, Shaffer must adduce sufficient evidence that the Parish's proffered reason for her termination is a pretext for retaliation by showing that the termination would not have occurred but-for her filing a police report regarding the October 27, 2013 incident. *See Alkhawaldeh*, 851 F.3d at 427. Schaefer has not produced any evidence to meet this standard. Instead she relies on her assumption that she was terminated in December 2013, the "tone" of a January 2014 letter from McGoey asking her to return files, and her

receiving her last paycheck in February 2014. There are no documents or testimony, other than Schaefer's subjective belief, supporting the notion that she was terminated in December 2013, rather than given a leave of absence. McGoey's January 7, 2014 letter does not state that Schaefer has been terminated and her subjective interpretation of the "tone" is not proof, or even a reasonable inference, of termination. On its face, the letter simply asks for the return of the Parish's files and documents, identifying specific legal files that were missing from Schaefer's office. The request is nothing more than a prudent and minimally intrusive measure to ensure the continuity of the Parish's business during an employee's absence due to FMLA leave. The Parish's March 14, 2014 letter does not alter this conclusion. Suspension of pay while on FMLA leave is not proof, or a reasonable inference, of termination. Rather, it signifies that the employee has run out of paid-leave hours and has switched to a leave-without-pay status – a common experience in today's workplace. The documentary evidence shows that Schaefer was terminated on April 2, 2014, when she failed to return to work as instructed by the March 14, 2014 letter. Schaefer has failed to sustain her ultimate burden of proof: the but-for standard represents a high burden that Schaefer has not and cannot meet in light of all the evidence presented. Therefore, the Parish is entitled to summary judgment dismissing her retaliation claim.

### C. Hostile Work Environment

Title VII forbids an employer from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Hostile work environment claims are cognizable under Title VII for harassment that is severe or pervasive. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998). To prevail on a hostile work environment claim, a plaintiff must prove: "(1) membership in a protected group; (2)

harassment; (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 654 (5th Cir. 2012). A term, condition, or privilege of employment is affected when the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 651 (quotation marks omitted). The severity or pervasiveness of the harassment is viewed in the totality of the circumstances. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009).

An employer is vicariously liable "to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). A supervisor, for purposes of the employer's vicarious liability under Title VII, is one who "is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball States Univ.*, 570 U.S. 421, 450 (2013). Tangible employment actions are those which "effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 431 (quotation marks omitted).

If the employee does not suffer a tangible employment action, the "defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence[.]" *Ellerth*, 524 U.S. at 765; *Faragher*, 776 U.S. at 807. The *Ellerth/Faragher* defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. The need for an anti-harassment policy with a

complaint procedure "may appropriately be addressed in any case when litigating the first element of the defense." *Id*. Also, a demonstration that the employee unreasonably failed to use the employer's complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.*; *Faragher*, 776 U.S. at 807-8.

Here, Schaefer alleges that Peralta was the individual who created the hostile work environment by his actions at home and in the workplace. She claims that he was acting at all times as the Parish president, and exercising supervisory control over her, even in their marital home. But Graves and McGoey were Schaefer's direct supervisors, not Peralta. Throughout the relevant period, the Parish had an anti-harassment policy in place which required employees to immediately report any harassment.[53] Schaefer signed the Parish's workplace harassment policy on January 21, 2011.[54] There is no evidence in this summary-judgment record of Schaefer's reporting Peralta's allegedly harassing behavior to anyone at the Parish in accordance with the policy. Schaefer argues that the Parish knew about Peralta's alleged harassment by virtue of Peralta's own knowledge of it because he was the Parish president. Imputing the alleged harasser's knowledge of his own behavior to the employer when the employer has an official reporting policy and complaint procedure would relieve the employee of any obligation to use the procedure and give the employer a chance to ameliorate the situation – a result that is contrary to the precedent and rationale of *Ellerth* and *Faragher*. This Court is duty-bound to adhere to the Supreme Court's controlling precedent and must grant the Parish's motion for summary judgment on Schaefer's hostile work environment claim because she failed to avail herself of the Parish's anti-harassment policy to report Peralta's alleged workplace conduct as would have allowed the Parish an opportunity to correct and prevent the conduct.

---

[53] R. Doc. 123-14.
[54] R. Doc. 123-13.

**IV.  CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Parish's motion for summary judgment (R. Doc. 123) is GRANTED, and Schaefer's claims for retaliation and hostile work environment are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 15th day of October, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE